1
2
3
4
5
6
7

8       **UNITED STATES DISTRICT COURT**

9       **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    BRYAN ANDREW KISTLER,                   Case No. 3:21-cv-02002-TWR-MSB

12                              Petitioner,
                                             **ORDER (1) GRANTING MOTION**
13    v.                                     **TO DISMISS PETITION FOR**
                                             **WRIT OF HABEAS CORPUS;**
14    M.B. ATCHLEY, Warden, et al.,          **AND (2) DENYING CERTIFICATE**
                                             **OF APPEALABILITY**
15                              Respondent.

16                                           (ECF No. 14)

17

18

19

20                      **INTRODUCTION**

21          Petitioner Bryan Andrew Kistler ("Kistler" or "Petitioner"), a state prisoner, is

22    proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

23    (ECF No. 1, "Pet.").  The Court has read and considered the Motion to Dismiss (ECF No.

24    14, "Mot.") and Memorandum of Points and Authorities in Support of the Motion to

25    Dismiss (ECF No. 14-1, "Mem. P. & A."), the Response to the Motion to Dismiss (ECF

26    No. 15, "Resp."), the lodgments and other documents filed in this case, and the legal

27    arguments presented by both Parties.  For the reasons discussed below, the Court **GRANTS**

28    the Motion to Dismiss, and **DENIES** a Certificate of Appealability.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, an eighteen-year-old student told her school counselor that her father, Kistler, had sexually assaulted her. (ECF No. 13-1 at 10.) Police were called to the school, and the victim told police that Kistler had been sexually abusing her since she was twelve years old. (*Id.*) The victim did not want to pursue prosecution at the time because she feared it would break up her family, but she agreed to undergo a sexual assault response team ("SART") exam. (*Id.*) A detective was assigned to do a follow-up investigation. (*Id.*)

In early 2016, the victim called the detective assigned to her case and told him her father had sexually assaulted her the night before. (*Id.* at 11.) The victim's mother was called to the school to pick up her daughter and the detective told her about the abuse. (*Id.*) An emergency protective order was then served on Kistler and he was removed from the family home. (*Id.*) When the mother obtained a temporary restraining order against Kistler, that order was served on him as well. (*Id.*) In October 2016, the victim told police she wanted to proceed with the prosecution of Kistler, and her SART exam results were submitted to the crime lab for analysis. (*Id.* at 14.)

In May 2018, the detective obtained a DNA sample from Kistler, which was a "match" to male DNA found on one of the victim's genital swabs. (*Id*. at 15.) An arrest warrant was subsequently issued for Kistler. (*Id*.) Sometime thereafter, Kistler fled to the Dominican Republic, and was arrested there in August 2019. (*Id*.)

On March 9, 2020, the San Diego County District Attorney's Office filed an Amended Complaint charging Kistler with four counts of aggravated sexual assault of a child under the age of fourteen, *see* Cal. Penal Code ("Penal Code") § 269(a), two counts of forcible lewd acts on a child under the age of fourteen, *see* Penal Code § 288(b)(1), seven counts of forcible rape, *see* Penal Code § 261(a)(2), four counts of sexual penetration by force on a fourteen-year-old child, *see* Penal Code § 289(a)(1)(A), four counts of lewd acts on a fourteen-year-old child, *see* Penal Code § 288(c)(1), four counts of forcible oral copulation with a minor fourteen years-of-age or older, *see* Penal Code § 288a(c)(2)(A),

and three counts of continuous sexual abuse of a child under the age of fourteen, *see* Penal Code § 288.5(a).  (ECF No. 13-1 at 47–55.)   Kistler pled guilty to three counts of continuous sexual abuse of a child (Penal Code § 288.5(a)) and two counts of forcible rape (Penal Code § 261(a)) in exchange for a stipulated sentence of twenty-eight years in prison and the dismissal of the remaining twenty-three counts.  (*Id.* at 42–46.)  He was sentenced on August 12, 2020, and did not appeal.  (*Id.* at 32–39.)

Kistler filed a habeas corpus petition in the San Diego Superior Court challenging his conviction on June 15, 2021.  (*See* ECF No. 13-2.)  The court denied the petition on the merits in a written order dated June 25, 2021.  (*See* ECF No. 13-5.)  Kistler next filed a motion to file a late appeal in the California Court of Appeal on July 19, 2021, and a petition for writ of habeas corpus in the California Court of Appeal on July 27, 2021.  (*See* ECF Nos. 13-6, 13-7.)  The state appellate court found Kistler had not been diligent in pursing his rights and denied the motion.  (*See* ECF No. 13-8.)  The court then denied the habeas petition as untimely and for failing to state a prima facie case for relief.  (*See* ECF No. 13-9.)  So Kistler filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied.  (*See* ECF Nos. 13-10, 13-11.)  Finally, he filed a petition for writ of coram nobis in the California Court of Appeal on December 29, 2021, which was summarily denied on January 20, 2022.  (*See* ECF Nos. 13-12, 13-13.)

Meanwhile Kistler filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on November 21, 2021.[1]  (ECF No. 1.)  Respondent filed a timely Motion to Dismiss and a Memorandum of Points and Authorities in Support of the Motion. (ECF Nos. 14, 14-1.)  Kistler subsequently filed a timely Response to the Motion.  (ECF No. 15.)

/ / /

/ / /

---

[1]     A petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the Clerk of Court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000).  Kistler signed his Petition on November 21, 2021.  (*See* ECF No. 1 at 46.)

# ANALYSIS

Kistler alleges his guilty plea was involuntary and his trial counsel provided ineffective assistance by coercing him to plead guilty by misrepresenting the sentence he would receive, failing to investigate his case, and failing to file a timely notice of appeal. (Pet. at 6, 16–17, 20–21, 24, 37, 35, 37, 41–45.)  He also alleges the prosecution withheld exculpatory material.  (*Id.* at 21, 36.)  Respondent contends the Petition is untimely because the statute of limitations began running when Kistler's conviction became final, expired before he filed his federal habeas corpus Petition, and Kistler is not entitled to sufficient statutory or equitable tolling to make the Petition timely.  (*See* Mem. P. & A.)  Respondent also argues Kistler's claims are procedurally defaulted.  (*Id.*)

## I.   Timeliness

A one-year statute of limitation applies to petitions for writ of habeas corpus filed by a state prisoner who is challenging his state court conviction in federal court.  28 U.S.C. § 2244(d)(1).  The limitation period begins to run "from the latest of" the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Kistler alleges he "[did] not know[] . . . and he could not, in exercising due diligence, have discovered" the basis for his claims "substantially earlier than the time of the writ," (Pet. at 30), which means there are two possible start dates for the statute of limitations:

1 the date Kistler's conviction became final, and the date Kistler could have, "through the
2 exercise of due diligence," discovered the factual basis for his claims.

3      **A.    Timeliness Under 28 U.S.C. § 2244(d)(1)(A)**

4      Kistler pled guilty on March 9, 2020, and was sentenced on August 12, 2020; he did
5 not appeal his conviction or sentence.  (ECF No. 13-1 at 33–37, 42–45.)  His conviction
6 therefore became final sixty days later, on October 12, 2020, when the time for an appeal
7 under California law expired.[2]  (*Id.* at 33); Cal. R. Ct. 8.308(a).  The statute of limitations
8 began running the next day and absent any tolling, it expired on October 12, 2021.  Kistler
9 filed his federal habeas corpus petition forty days later on November 21, 2021.  The statute
10 of limitations, however, is subject to both statutory and equitable tolling.  *See* 28 U.S.C.
11 § 2244(d)(1); *Holland v. Florida*, 560 U.S. 631, 649 (2010).

12      *1. Statutory Tolling*

13      28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed
14 application for State post-conviction or other collateral review . . . is pending shall not be
15 counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).
16 Kistler filed a petition for writ of habeas corpus in the San Diego Superior Court on June
17 15, 2021.  (*See* ECF No. 13-2.)  The superior court denied the petition on June 25, 2021.
18 (*See* ECF No. 13-5.)  Kistler is thus entitled to ten days of statutory tolling from June 15,
19 2021 to June 25, 2021 for this filing.  *See* 28 U.S.C. § 2244(d)(2).

20      Kistler is not entitled to any statutory tolling, however, for the habeas corpus
21 petitions he filed in the California Court of Appeal and the California Supreme Court
22 because they were found to be untimely.  "[A]n application is pending as long as the
23 ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of'
24 that process."  *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002).  Generally, this includes the
25 time during which a petition is being considered by a state court and the time between

26

27 [2]      The sixtieth day was October 11, 2020, which was a Sunday.  That day is therefore excluded from
28 the computation of time.  *See* Cal. Civ. Proc. Code §§ 12, 12(a); *People v. Malone*, 213 Cal. 406, 407–10 (1931) (applying § 12 to criminal appeals).

filings, referred to as "gap tolling." *See Porter v. Ollison*, 620 F.3d 953, 958 (9th Cir. 2010); *see also Evans v. Chavis*, 546 U.S. 189, 199–200 (2006). When a state court petition is found to be untimely, however, it is not "properly filed," as defined in 28 U.S.C. § 2244(d)(2) and a petition is not entitled to statutory tolling for either the time the petition was pending or the time between filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). An untimely state habeas petition "must be treated as improperly filed, or as though it never existed, for purposes of section 2244(d)." *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011).

The habeas corpus petition Kistler filed in the California Court of Appeal on June 20, 2021 was denied as untimely pursuant to *In re Reno*, 55 Cal. 4th 428, 459–60 (2012), and for failure to state a claim. (*See* ECF No. 13-9.) The petition for review Kistler filed regarding the denial of his habeas corpus petition in the California Supreme Court on August 18, 2021, was summarily denied on September 29, 2021, meaning the California Supreme Court denied Kistler's petition as untimely as well. (*See* ECF Nos. 13-11); *see Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991) (stating that where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims). Thus, Kistler is not entitled to any statutory tolling for the state habeas corpus petitions he filed in the California Court of Appeal or the California Supreme Court. *See Pace*, 544 U.S. at 417; *Lakey*, 633 F.3d at 786.

Kistler also filed a motion to file a late notice of appeal in the California Court of Appeal on July 6, 2021. (*See* ECF No. 13-6.) This filing did not toll the statute of limitations because it is not an "application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2); *see Stokes v. Sandor*, No. CV 09-6526-SJO (JEM), 2010 WL 1643557, at *3 (C.D. Cal. Mar. 10, 2010) (finding a request to file a late notice of appeal did not toll the statute of limitations because it was not directed at Petitioner's underlying conviction and sentence and collecting cases).

For the reasons discussed, Kistler's conviction became final on October 12, 2020.

The one-year statute of limitations would have expired on October 12, 2021, but Kistler is entitled to ten days of statutory tolling.  Accordingly, his federal habeas corpus petition was due on October 22, 2021.  He did not file his petition until November 21, 2021, and therefore the Petition is untimely unless he is entitled to sufficient equitable tolling to make it timely.

### 2.  Equitable tolling

The statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA") "is subject to equitable tolling in appropriate cases."  *Holland*, 560 U.S. at 645.  "To be entitled to equitable tolling, [Petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) (quoting *Pace*, 544 U.S. at 418).  Equitable tolling is "unavailable in most cases," and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (citations omitted).  A petitioner must show that "'the extraordinary circumstances' were the cause of his untimeliness."  *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003)).

In addition to his attorney failing to file a timely notice of appeal, Kistler claims that a series of events beginning shortly after he was sentenced impeded his ability to file his federal habeas corpus petition in a timely manner.  In early September 2020, a few weeks after he was sentenced, Kistler claims he wrote to his trial attorney and told him he wanted to withdraw his plea and received no response.  (ECF No. 13-3 at 34.)  He then arrived at state prison in late September 2020 and was placed in Covid-19 quarantine.  (*Id.* at 35; Pet. at 50.)  On October 24, 2020, Kistler was assaulted by a fellow inmate—he spent three days in the hospital and was released back to the prison on October 27, 2020.  (ECF No. 13-3 at 18, 25, 58; Pet. at 50.)  He claims that during November and December of 2020 he was again placed in quarantine and contracted Covid-19.  (ECF No. 13-3 at 35.)  On January 20, 2021, Kistler was transferred to Salinas Valley State Prison and placed in

quarantine again.  (*Id.*)  Kistler states that in February and March of 2021, he sent letters to his attorney, the San Diego Superior Court, and the San Diego District Attorney's office notifying them he wished to withdraw his plea but received no responses.  (*Id.*)  On March 20, 2021, Kistler claims his attorney told his family members he would help Kistler withdraw his plea.  (*Id.* at 36.)  And during April 2021, Kistler claims he again sent letters to his attorney telling him he wanted to withdraw his plea and asking for his court documents, but he received no response.  (*Id.*)  He continued to send letters to his attorney, various courts, and the California State Bar through May, June, and July of 2021, but he still received no responses.  (Pet. at 54–55.)  He filed his first state habeas petition on June 15, 2021, nine months after his conviction became final on October 11, 2020.  (ECF No. 13-2.)

Kistler's attorney's failure to respond to his inquiries about a motion to withdraw his plea is not sufficient to entitle him to equitable tolling for his federal petition because it is not an "extraordinary circumstance" that "prevented timely filing."  *Lawrence*, 549 U.S. at 336–37.  Nor is his attorney's failure to file a timely notice of appeal.  "[W]here an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations."  *Spitsyn*, 345 F.3d at 800 (citation omitted).  To be sure, an attorney's failure to respond to a client or former client's inquiries is unprofessional.  But "[n]ot all attorney mistakes qualify as a basis for equitable tolling," and "run of the mill mistakes by one's lawyer that cause a filing deadline to be missed do not rise to the level of extraordinary circumstances."  *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015) (citing *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001)).  Kistler has not explained how counsel's failure to respond to his inquiries about filing a motion to withdraw his plea, failing to file a motion to withdraw his plea, or failing to file a timely notice of appeal were the cause of Kistler's failure to file a timely federal habeas corpus petition.  *Spitsyn*, 345 F.3d at 799; *Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010) ("Counsel's failure to perfect an appeal simply meant that [the petitioner] had one year from the expiration of his time to file a notice of appeal in which

1   to initiate a federal habeas action—it did not prevent him from filing the petition."); *see*
2   *also Littleton v. Garcia*, No. CV 10-1655-AG (JC), 2010 WL 5563578, at \*4 (C.D. Cal.
3   Nov. 12, 2010) (stating that "[t]he failure to file a notice of appeal as instructed constitutes
4   nothing more than negligence").

5         The Covid-19 quarantines and transfers Kistler was subjected to, and the hospital
6   stay he underwent, may be sufficient to qualify as an "extraordinary circumstance" if they
7   resulted in "a complete lack of access to a legal file [because] it is 'unrealistic to expect a
8   habeas petitioner to prepare and file a meaningful petition on his own within the limitations
9   period without access to his legal file.'" *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir.
10  2009) (quoting *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027–28 (9th Cir. 2005)).
11  But Kistler has not provided sufficient support for his claim that the Covid-19 quarantines,
12  transfers, and his hospital stay were the "but for" cause of his inability to file his federal
13  habeas corpus petition on time.[3]   Moreover, Kistler would still need to show he was
14  "diligently pursuing his rights" to be entitled to equitable tolling.  As discussed below in
15  Section II, the Court concludes Kistler was not diligent, and therefore he is not entitled to
16  any equitable tolling.

17         *3. The Petition is Untimely Under 28 U.S.C. § 2244(d)(1)(A)*

18         The statute of limitations for Kistler's conviction began running on October 11,
19  2020, and, with statutory tolling, expired on October 21, 2021.  He is not entitled to any
20  equitable tolling.  Therefore, his Petition, filed on November 21,2021, is untimely under
21  28 U.S.C. § 2244(d)(1)(A).

22   **B.    Timeliness Under 28 U.S.C. § 2244(d)(1)(D)**

23         Whether the Petition is timely under 28 U.S.C. § 2244(d)(1)(D) depends on what
24  date "the factual predicate of the claim or claims presented could have been discovered

25
26  _____

27  [3]      The Court declines to consider whether to conduct an evidentiary hearing on this question.  Even
    if Kistler successfully established he was entitled to sufficient equitable tolling to render his federal
28  Petition timely, his Petition would still be subject to dismissal because, as this Court concludes, his claims
    are procedurally defaulted.

through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  The Ninth Circuit describes the inquiry as follows:

> "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances."
>
> "Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only 'if vital facts could not have been known'" by the date the appellate process ended.  The "due diligence" clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered.
>
> Although section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances.  (Citations omitted.)  Just as the petitioner's particular circumstances may include impediments to discovering the factual predicate of a claim, they may also include any unique resources at the petitioner's disposal to discover his or her claim.  *See, e.g.*, *Schlueter* [*v. Varner*, 384 F.3d 69, 75 (3rd Cir. 2004)] (considering that a petitioner's parents actively assisted him in evaluating his diligence).

*Ford v. Gonzalez*, 683 F.3d 1230, 1235–36 (9th Cir. 2012) (citations and footnote omitted); *see also Daley v. Beard*, No. 2:14-cv-2691 MCE DB P, 2017 WL 56869, at * 5 (E.D. Cal. Jan. 5, 2017) ("In considering a prisoner's claim that counsel was constitutionally ineffective for failing to file a proper notice of appeal, a court should focus on the prisoner's conditions of confinement, a prisoner's ability to communicate with the court and counsel, and communications between the prisoner's counsel and between the prisoner and the court.")

Kistler alleges counsel provided ineffective assistance in three ways: (1) he failed to file a notice of appeal; (2) he failed to investigate his case; and (3) he coerced Kistler into pleading guilty by misrepresenting the sentence he was going to receive.  (Pet. at 6, 16–17, 27.)  Each of these claims must be analyzed separately under 28 U.S.C. § 2244(d)(1)(D) for timeliness.  *See Pace*, 544 U.S. at 416 n.6.

/ / /

/ / /

### 1. *Failure to File a Notice of Appeal*

Kistler has not established the necessary diligence to secure a later start date under § 2244(d)(1)(D) for his claim that counsel provided ineffective assistance when counsel failed to file a notice of appeal.  The first time Kistler took action regarding his attorney's failure to file a notice of appeal is June 6, 2021, when Kistler filed a request to file a late notice of appeal in the California Court of Appeal.  (ECF No. 13-6.)  By then, nine months had passed since Kistler's notice of appeal was due on October 11, 2020.  In similar cases, district courts in California have concluded that petitioners could have discovered their attorney had failed to file a notice of appeal through the exercise of due diligence by the sixty-day deadline for filing such a notice.  *See Favela v. Madden*, No. CV-16-8896-JAK (E), 2017 WL 1449228, at *5 (C.D. Cal. March 15, 2017); *Boddie v. Duffy*, No. CV-14-8964 -SWV(E), 2015 WL 5921321, at *9 (C.D. Cal. Apr. 7, 2015); *Dominguez v. McEwan*, No. 1:12-cv-00784, at *2, 2012 WL 4863227 (E.D. Cal. Oct. 11, 2012); *Stokes*, 2010 WL 1643557, at *2 n.2; *Mayer v. Marshall*, No. CV-08-5585-RSWL (AGR), 2009 WL 102809, at *3 (C.D. Cal. Jan 12, 2009).

Further, though Kistler has recounted the many letters he wrote to his trial counsel, the state court, and the San Diego District Attorney, which were not responded to, those efforts related only to his request to file a motion to withdraw his plea, not a notice of appeal.  (*See* Pet. at 50, 54–55; ECF No. 13-3 at 34–36.)  And while the Court must consider "a petitioner's particular circumstances [and] impediments to discovering the factual predicate of a claim," *Ford*, 683 F.3d at 1235, it must also consider "any unique resources at the petitioner's disposal to discover his or her claim." (*Id*.)  Here, it is clear from the mail logs Kistler has supplied that he was able to mail documents to various individuals and courts since at least February 2021.  (*See* Pet. at 53–56.)  But he did not mail anything, including either a notice of appeal or a request for information about his appeal, to the California Court of Appeals until July of 2021 when he filed a request to file a late notice of appeal.  (*See* Pet. at 53–56; ECF No. 13-6.)  It is also clear from both the declaration and the exhibits attached to the petition for writ of habeas corpus he filed in the San Diego

Superior Court that he had the assistance of family members outside of prison who were helping him with his attempts to obtain his case file and who were in contact with his trial counsel. (*See* ECF No. 13-3 at 23, 36.) These documents show he did not seek his family's assistance to file a notice of appeal or obtain information about the status of his appeal. (*See id*.) Instead, he only sought assistance regarding filing a motion to withdraw his plea and obtaining his file from his attorney. (*See id*.)

For the reasons stated above, the Court concludes that Kistler was not diligent in pursuing his ineffective assistance of counsel claim based on counsel's failure to file a notice of appeal. Thus, he is not entitled to a later start date under § 2244(d)(1)(D) for this claim.

### 2. *Failure to Investigate and Coercing His Guilty Plea*

Kistler's claims that his attorney provided ineffective assistance of counsel by failing to investigate his case and coercing him to plead guilty are also not entitled to a later start date under 28 U.S.C. § 2244(d)(1)(D). Kistler admitted on the plea form that he had "lived in the same home with Kate K.," had "engaged in three or more acts of sexual conduct with Kate K. in violation of PC 288.5(a)," and "had sexual intercourse with Kate K. against her will, by means of force and duress, in violation of PC 261(a)(2) on two separate occasions." (ECF No. 13-1 at 42–46.) These admissions put Kistler on notice that counsel's investigation of his case had concluded. Thus, he could have discovered, "through the exercise of due diligence," the basis for his claim that counsel did not investigate his case at the time he pleaded guilty.

The same is true of Kistler's coerced plea claim. Kistler alleges his attorney coerced him into pleading guilty by misrepresenting the sentence he would receive and that the plea "was involuntarily made under inducement, coercion, and without knowledge of counsel of record, making the plea illegal, null, and void." (Pet. at 16.) He claims his signature on the plea form was forged, and that trial counsel told him that if he pleaded guilty, "the district attorney [would] recommend to the court that he be given probation and a suspended sentence, and the court always follows the recommendation." (*Id.* at 24, 27.)

He also alleges that he was not advised of the following consequences of his plea: fines, restitution, and penalty assessments; the maximum possible sentence he faced; his ineligibility for probation; his right to appeal; that the court would find him guilty if he pleaded no contest;[4] and the benefits he was receiving by pleading guilty. (*Id.* at 41–42.) The plea form Kistler signed shows he was advised, and he acknowledged, that by pleading guilty he would receive a maximum stipulated sentence of twenty-eight years in prison. (ECF No. 13-1 at 42–46.) Thus, the factual basis for Kistler's claim regarding counsel misrepresenting his sentence "could have been discovered through the exercise of due diligence" at the latest when Kistler pled guilty. The plea form also advised him that he would receive twenty years of parole, a $10,000 fine, and a restitution fine of $300 to $10,000. (*Id.* at 43.) It further advised him that "a plea of No Contest is the same as a plea of Guilty for all purposes," and that the prosecution would dismiss the remaining twenty-three counts in the complaint in exchange for his guilty plea to five counts. (*Id.* at 42.) Thus, Kistler could have discovered the factual predicate for his claim that counsel coerced him into pleading guilty through the exercise of due diligence no later than when he pled guilty.

For the foregoing reasons, no later start date under 28 U.S.C. § 2244(d)(1)(D) is available for these claims. The Court therefore concludes the Petition is untimely under 28 U.S.C. § 2244(d)(1)(D).

## II.   Procedural Default

Respondent also argues Kistler's Petition must be dismissed because it is procedurally defaulted. (Mem. P. & A. at 8–15.) The Ninth Circuit has held that because procedural default is an affirmative defense, in order to establish a claim is procedurally defaulted, Respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place that defense at issue, Kistler must then "assert[] specific factual

---

[4]       Kistler pleaded guilty, not no contest. (ECF No. 13-1 at 42–46.)

allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Kistler can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). Where a state court order cites multiple state procedural grounds—not all of which would bar federal review—without specifying which bar or bars apply to which claims and "if it is impossible for the federal court to ascertain whether such grounds have been relied upon, the state court decision cannot bar federal review." *Koerner v. Grigas*, 328 F.3d 1039, 1052 (9th Cir. 2003).

Here, Kistler raised his ineffective assistance of counsel claims in the petition for review he filed in the California Supreme Court, which summarily denied the petition. (ECF Nos. 13-10, 13-11.) This Court must therefore "look through" to the last reasoned state court decision denying his claims. *Ylst*, 501 U.S. at 805–06. Here, that is the state appellate court's opinion addressing Kistler's habeas petition, which clearly found Kistler's entire petition, including the ineffective assistance of counsel claims, to be procedurally barred by *In re Reno*, 55 Cal. 4th at 459, and that Kistler had failed to state a prima facie case for relief. (*See* ECF No. 13-9 at 3–4.)

/ / /

The timeliness bar of *In re Reno*, 55 Cal. 4th at 459 is an independent and adequate state procedural bar.  *See Johnson v. Lee*, 578 U.S. 605, 608–09 (2016) (per curiam); *Walker*, 562 U.S. at 317; *State v. Gonzales*, 809 F. App'x 367, 370 (9th Cir. 2020); *Mares v. Clark*, No. 8:21-cv-00843-RGK-KES, 2022 WL 1433534, at *16 (C.D. Cal. Feb. 24, 2022).  Kistler must therefore "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice" in order for this Court to consider his claim.  *Coleman*, 501 U.S. at 750.

The "cause" prong is satisfied if Kistler can demonstrate some "objective factor" that precluded him from raising his claims in state court.  *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).  Here, there are two possible bases for satisfying the cause prong.  First is Kistler's claim that trial counsel was ineffective because he did not file a notice of appeal. (Pet. at 6.)  Ineffective assistance of counsel can constitute "cause" for default under certain circumstances.  The Supreme Court has held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).  To establish "cause" under *Martinez*, Kistler must show:

> (1) the underlying ineffective assistance of trial counsel claim is "substantial"; (2) the petitioner was not represented or had ineffective counsel during the PCR [post-conviction relief] proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (citing *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

Kistler's initial collateral proceeding was the habeas corpus petition he filed in the San Diego Superior Court which denied his ineffective assistance of counsel claims on the merits.  (*See* ECF Nos. 13-2 to 13-5.)  It was the California Court of Appeal that imposed

the timeliness bar of *In re Reno* in its opinion denying Kistler's subsequent habeas corpus petition.  (ECF No. 13-9.)  Thus, Kistler's default did not occur in the "initial-review collateral proceeding stage," and *Martinez* does not apply.

The second possible basis for satisfying the cause prong is the alleged failure of counsel to respond to Kistler's letters and phone calls and the various prison conditions Kistler alleges he was subjected to—being quarantined due to Covid-19 in September, November, and December of 2020, the assault by a fellow inmate in October 2020 and resulting hospital stay, and Kistler's transfer to Salinas Valley State Prison in January 2021. It is possible these conditions could form the basis for cause, but Kistler would have to establish they actually prevented him from filing a timely habeas corpus petition in the state appellate court, which he has not done.  *McCleskey*, 499 U.S. at 497; *Stewart v. Johnson*, No. 2:21-cv-01490-APG-BNW, 2023 WL 205773, at *4 (D. Nev. Jan. 14, 2023).

And even if Kistler was able to establish cause for his default, he has not established prejudice.  "Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the alleged error."  *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Kistler has not demonstrated he suffered prejudice from any of the instances of ineffective assistance of counsel he alleges because his claims are conclusory and without factual support.  He claims counsel did not investigate his case, but he has not explained what investigation counsel should have performed and how it would have changed the outcome. He claims his attorney coerced him into pleading guilty by telling him he would be granted probation and that he was not advised of the maximum possible sentence he faced, but Kistler's plea form shows he acknowledged that by pleading guilty, he would receive a maximum sentence of twenty-eight years in prison.  (ECF No. 13-1 at 42–46.)  Kistler has provided no facts to contradict this acknowledgment, which he signed under penalty of perjury.  He alleges he was not told (1) he was ineligible for probation, (2) he was waiving his right to appeal, (3) that the court would find him guilty if he pleaded no contest, (4) that he would be subject to fines and penalties, and (5) the benefits he was receiving by pleading guilty.  (Pet. at 41–42, 50.)  The plea form he signed under penalty of perjury, however,

16

shows he was advised that by pleading guilty he would be denied probation and that he was giving up his right to appeal.  (ECF 13-1 at 43.)  It also shows he was aware of "issues related to strike priors," the stipulated sentence he was to receive, that "a plea of No Contest is the same as a plea of Guilty for all purposes," and that he would receive a $10,000 fine and a restitution fine of $300 to $10,000."  (*Id*.)  The plea form also told Kistler that in return for pleading guilty the prosecution agreed to dismiss twenty-three of the twenty-eight counts he was facing.  (*Id*. at 42.)  Kistler has not provided any evidence that contradicts these facts.  Without any evidence to support his claims, beyond his own self-serving statements, Kistler has not established he was prejudiced by the state appellate court's imposition of a procedural bar to them.

Kistler has also not shown that failure to review his defaulted claims "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show "a constitutional violation has probably resulted in one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In *Schlup*, the Supreme Court explained a petitioner's claim of actual innocence can act as a "gateway" to having his otherwise procedurally defaulted claims considered by a federal court.  *Id*. at 326–27.  The Court has noted the standard is "demanding."  *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013).  "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *Id*. (quoting *Schlup*, 513 U.S. at 316); *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (A petitioner "must demonstrate more than that 'a reasonable doubt exists in the light of the new evidence,' . . . [he] must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" (citation omitted)).  Kistler has not provided the Court with any facts supporting a conclusion that he is actually innocent of the charges of which he was convicted, or that "it is more likely than not that no reasonable juror would have convicted

/ / /

him in light of the new evidence." *See Wood*, 130 F.3d at 379.  Accordingly, the Court concludes Kistler's ineffective assistance of counsel claims are procedurally defaulted.

## III.   Prosecutorial Misconduct

In his Petition, Kistler alleges the prosecutor "intentionally withheld exculpatory evidence regarding jurisdiction and due process procedures as outlined in the Treaty between the United States and the Dominican Republic," as well as "communication between the district attorney's office and the Attorney General of the state of California, warrants, and communication with law enforcement in the Dominican Republic, US Marshals and FBI, which would reveal further grounds that petitioner would not have taken a plea deal."  (Pet. at 20–21.)  He also claims "police suppressed material of key witness statement, contradictory DNA evidence, jurisdiction and extradition documents having exculpatory value."  (*Id.* at 36–37.)  Kistler raised a similar claim in the petition for writ of habeas corpus he filed in the California Supreme Court.  (*See* ECF No. 13-10 at 14.)  There he stated that "the perjury of prosecution and police suppressed material of contradictory DNA evidence having exculpatory value withheld by prosecution . . . will prove defendant's innocence and renders plea involuntary . . . ."  (*Id.*)

Neither the state courts nor Respondent have addressed this claim.  Giving Kistler every benefit of the doubt, and assuming for the purposes of this Order that this claim is exhausted, timely, and not procedurally defaulted, the Court will address this claim on the merits.  Where, as here, there is no state court opinion to which this Court can defer, the Court must review the claim *de novo*.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held a prosecutor must disclose all material evidence, including impeachment evidence, to the defendant. *Brady*, 373 U.S. at 87.  In order to establish a *Brady* violation, Kistler must prove three elements: (1) the evidence was suppressed by the prosecution, either willfully or inadvertently; (2) the withheld evidence was either exculpatory or impeachment; and (3) the evidence was material to the defense.  *See Strickler v. Greene*, 527 U.S. 263, 281–82

(1999); *Benn v. Lambert*, 283 F.3d 1040, 1052–53 (9th Cir. 2002) (citing *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985) and *United States v. Agurs*, 427 U.S. 97, 110 (1976)).  "Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial."  *Benn*, 283 F.3d at 1053 (citing *Bagley*, 473 U.S. at 676 and *Agurs*, 427 U.S. at 111–12).  "Moreover, we analyze all of the suppressed evidence together, using the same type of analysis that we employ to determine prejudice in ineffective assistance of counsel cases."  *Id.* (citing *Bagley*, 473 U.S. at 682 and *United States v. Shaffer*, 789 F.2d 682, 688–89 (9th Cir. 1986)).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Kistler has not explained what exculpatory evidence was allegedly contained in the "jurisdiction and due process procedures" of the extradition treaty between the United States and the Dominican Republic, the "communication between the district attorney's office and the Attorney General of the state of California, warrants, and communication with law enforcement in the Dominican Republic," or the "key witness statement, [and] contradictory DNA evidence."  (Pet. at 20–21, 36–37.)  Nor has he explained how any such evidence was suppressed by the prosecution or how that evidence was material to his defense.  *Strickler*, 527 U.S. at 281–82.  His claims are both conclusory and speculative, and he is therefore not entitled to relief as to this claim.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"); *Roybal v. Davis*, 148 F. Supp. 3d 958, 1105 (S.D. Cal. 2015) (citing *James*, 24 F.3d at 26).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Respondent's Motion to Dismiss (ECF No. 14) and **DISMISSES** Kistler's Petition.  Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254 (West

3:21-cv-02002-TWR-MSB

Supp. 2020).   A certificate of appealability will issue when the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253; *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005).   A "substantial showing" requires a demonstration that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Here, the Court concludes Kistler has not made the required showing, and therefore a certificate of appealability is hereby **DENIED**.

       **IT IS SO ORDERED.**

Dated:  March 7, 2023

Honorable Todd W. Robinson
United States District Judge